May it please the Court, Amber Fletcher, on behalf of Petitioner, this is a pre-Real I.D. Act asylum case in which the agency below made a negative credibility finding. At a minimum, this Court must remand the matter because the agency decisions are so riddled with errors. This Court can't make a determination based on anything other than what the agency relied on in its decisions. And here, the Board and the I.J. expressly stated that they base their credibility finding on multiple factors considered cumulatively. If that accumulation of factors is fatally flawed, this Court must either find Petitioner credible or remand the matter for a new credibility finding. Is it true if the Board makes several reasons why credibility has been challenged and found a negative credibility finding, is it true that if any one of them holds up that we affirm? That is our position. However, I know there's case law to the contrary from which this case is distinguishable because expressly in the Board's decision and the I.J.'s decision, they stated that they were considering everything together and expressly stated that not all of the factors considered would standing alone support an adverse credibility finding, and those factors were not specified. Now, what – how then do you distinguish Wang? On precisely that basis, because in Wang it wasn't specific, the agency decisions weren't specific about the cumulative consideration that was made. So in this case we're going to say that the Board's decision was based on a cumulative consideration of the factors. And where is the language in the Board's opinion that leads you to that conclusion? Specifically, the Board says, page 4 in the record, some of these discrepancies would not individually be sufficient and doesn't specify which. Some of these. Exactly. Some of these. Right. And did they identify what they were talking about? Exactly, Your Honor. They did. They did not. I'm sorry. They did not identify exactly which ones would standing alone be sufficient, and neither did the I.J. But what case law do you rely on for your position here? It's a substantial evidence test, right? Correct, Your Honor. The record is replete with references to where the I.J. and I believe later on the Board said, here's what he said at this one point. Here's what he said later on. These are mutually inconsistent. They go to the heart of the claim. I'm not understanding your point that somehow the Board has to pick out something and say, we rely on this one, but not on that one, this one, and that one. It's a substantial evidence test, isn't it? It is a substantial evidence test. And what case law are you relying upon that says that if the Board does not specify which – say there are ten things that affect your client's credibility, and the Board mentions three or four of them, you're saying that you have to send the whole thing back because they didn't discuss the other five, six? No, I'm not exactly saying that, Your Honor. I think each case is different. But where – What's your case law? The case law would be Ventura, also SEC v. Chenery. Do you think those cases say what you just said? Not exactly, Your Honor. I don't think so. No. I don't have anything to cite that precisely says what I just said. But – Do you want us to make new law? I don't think it would be new law, Your Honor. Well, there's nothing that says it in the past, and you want something different than you want us to make new law, right? I think it would be a more specific distillation of the existing law. Creative distillation of former cases, perhaps. Yes, Your Honor. Exactly. So are you saying – if I'm understanding you correctly, you're saying that because the BIA said that some of the factors standing alone would not be enough, and we don't know which factors the BIA thought were not enough, and if we said we determined those were the best factors, we would be deciding on a ground different than the BIA. That's right, Your Honor, because the Board might then – might not have made that same – might not have weighed the evidence that way. This Court cannot go in and, in the first instance, re-weigh the evidence or take parts of what was relied upon by the agency and conclude that that was sufficient in this case, because, for one thing, this Court isn't the trier of fact and wasn't in the room when Mr. Singh was testifying. Also – So I've heard that argument before, but I – as Judge Smith indicated, none of our We haven't adopted it. So maybe you could move on, and assuming that we disagree with that SECB-Cheney approach, why was the IJ and BIA wrong that their determination wasn't supported by substantial evidence? Yes, Your Honor. The IJ relied on speculation, on her own misconstruals of the record. She also committed procedural errors here. She required – faulted Petitioner for not presenting documents when none were requested, and this is a pre-Real ID Act case, and that's simply not permissible. But she did – her decision, which is also before this Court, basically – I mean, one of the major things she relied upon was her characterization of the testimony as vague, shifting, and confusing. She said that the – his testimony regarding contents of his declaration was much more detailed than the – his testimony about his general life. In fact, the declaration was barely over two pages, and he elaborated extensively on those contents and other pieces of information about his general life and background in India. So we've said even when there are minor inconsistencies, when there's – when you read the transcript and compare the dates and the times and the places, there are a multitude of inconsistencies, which the – some of which the IJ identified. And we've said that IJ is entitled to – to conclude when there's that sort of pattern of inconsistencies, that they deprive the testimony of the ring of truth, and therefore, the adverse credibility determination can be sustained or is supported by substantial evidence. Given the number of inconsistencies in this record, why couldn't we hold on that ground for the IJ? Your Honor, I think there are only three sources of inconsistencies, and those were all with the documents. There were slightly discrepant dates on the documents from the doctor who treated Mr. Singh, from the panchayat, the village council, that confirmed that he was, in fact, a sarpanch or village leader, and from the block committee. So as to the doctor's letter, the discrepancies there are a matter of a couple of days. The – But that – the doctor's letter is really a minor, minor part of this, is it not? I mean, at least as I read it, here, his – his membership in the Akali Dhanman party in the block committee in his tenure as a sarpanch, his testimony was completely at odds with at least the understanding of the IJ as to how these things really work. It raised questions about whether he was, in fact, what he claimed to be. He says he was elected, there weren't – oh, I'm sorry, he said that there were no elections when, in fact, that's what happens. He said he was chosen by the unanimous consent of the village, and his brother declined it, and he got it, and yet he wasn't – and he says he wasn't a member of the party that was involved. I mean, these go to the real heart of his claim, that he was persecuted because of these activities that his – what That doesn't constitute substantial evidence supporting the adverse credibility finding. Well, as to the sarpanch elections, the judge in her decision says he claims he was appointed, not elected, but she says, I believe Exhibit 6, the country profile, will show that there were elections which were controversial all over Punjab. She clearly hadn't read it, for this case, anyway. And Exhibit 6, which is the country profile from 1996, and I don't have the page with me right now, but it doesn't say that. It's in the 700s in the record. What about his point as to what the central goal of the Akali Dalman party was? Well, he was never asked what the central goal was. He was asked what some of the goals were, and he said, well, the – rectify the unkept promises by the government to Punjab regarding electricity, protection of the Sikhs, religious equality. Those are all goals of the Dalman party, and he affirmatively later brought up Khalistan, the separate state that the party traditionally has advocated for, and he stated, well, we're advocating for that peacefully. I think a review of the record shows – for example, the judge says, when asked how many boys he helped get released from police custody, he could not say. Instead, he said it was a big village, and eventually, he said he thought the number was between 16 to 18. He gave no concrete examples, but in fact, he immediately, when asked, said, it's a big village. I don't know the precise number. It was 16, 17, 18. There was no eventually there. There was no instead there. The judge completely misrepresented the record there and in many other places. He provided – she also ignored his lack of education as one of the circumstances she's considered to – required to consider. She ignored all the spontaneous and detailed testimony he gave about being on the block committee, about being on the panchayat, about being Sarpanch, which is all over the record. In short, I think the judge was biased in this case and didn't review the record carefully. Okay. Thank you very much. Let's hear from the government. If you may please the Court, my name is Andrew O'Malley. I represent the Attorney General of the United States. This Court should deny the petition for review because substantial evidence in the record supports the agency's determination that Mr. Singh was not credible. Indeed, he started his narrative providing information that we know is contradictory, how he became Sarpanch. He then went on and failed to provide any real meat or flesh to the skeletal bones of his claim, and he was even nonresponsive when he was asked direct questions. His alleged role in the local leadership had – his whole claim for everything was based upon that, right? That's correct, Your Honor. And again, as the immigration judge stated, his testimony in that regard was vague, unspecific, shifting, and unresponsive. So we've said in numerous cases that the vagueness argument is mere speculation, and we've been very reluctant to base a adverse credibility, uphold an adverse credibility finding based on vague testimony. And opposing counsel indicates vagueness is – reasonable minds could disagree about whether it's vague or not. Is there anything – so I'm really looking for something that is a specific inconsistency that goes to the heart of the asylum claim, which in this pre-Real ID Act context we would really need. And I wasn't sure I saw that, so maybe you could point it to me. Well, I think the testimony concerning his membership in the Block Submit really underscores the point. And whether or not he was involved in these political organizations and the political party really are the heart of his claim. And his testimony as to the Block Submit, it's not just vague, it's simply unresponsive. And the immigration judge made that absolutely clear during the hearing. He was questioned as to his activities, and he said, well, I was a member, there were 126 villages, and they distributed benefits. So opposing counsel says that was just technical details that the IJ was asking for. That's not required. And the IJ was just speculating about what he should have known. Well, that's technical details concerning the electricity issue, which is when the IJ had to drill down, down, down further trying to get him to give some sort of specific information. With regard to the Block Submittee, he was asked a specific – his specific personal duties, and he said, I was a member. Asked again, he said, well, there was a chairman and they passed declarations. Asked again, and he said, we got funds and distributed funds. And the IJ actually intervened at this point and said, sir, you are not being responsive to the question. What were the personal duties? At which point he went back and just reiterated there was 126 villages, and they distributed benefits. He simply had no information. Directly thereafter, he was asked to describe his role in the Khaled Amman political party, and he was – again, he was unable to provide any specific information. It's at that point that he says that after failing to mention Khalistan as a political party, he was asked to describe his role in the Khaled Amman      And that's the sort of argument that I think is the most important argument that the IJ has to make, and it's particularly the profile of asylum claim bears out, is something somebody should know and should say if they're claiming asylum at this point. That sort of argument, we've been very reluctant to uphold an adverse credibility determination. And I'm sure you've read the same cases I have where we've said that's speculation, that's just – the IJ just had expectations, there's no reason why what the alien said was not enough. So I was looking for something beyond that. Sure. It goes beyond that to the fact that his role in politics prior to becoming Sarpanch was simply delivering water and food, and all of a sudden he's appointed Sarpanch by a – unanimously by a village of 12,000 to 13,000 people. And then, although he's Sarpanch, and although he's a member of the Bloc's committee, his role in the Khaled Amman political party is simply collecting funds and distributing funds. It just doesn't add up. It's inconsistent with his testimony concerning what his political activities were that he could not testify as to what his specific duties were. So Judge O'Scanlan famously said in Gibralt that the IJ can't speculate but can use common sense. And so the question is, is this more common sense or more speculation? This is more common sense, absolutely, Your Honor. And the immigration judge, I think, is very aware of this here because the immigration judge takes this vague testimony and really, really does an effort to drill down and find something specific to get this individual to say something specific to show that he was actually participating in these activities. That's where the electricity issue comes in. And he has the burden of proof, does he not? That's correct, Your Honor. And he simply didn't meet it. And the immigration judge went above and beyond to get him to say something specific, and he just could not do it. Added to this are other vagaries in the record concerning the doctor's letter, as we mentioned, which really goes to not, as Petitioner's counsel says in their brief, that there's discrepant addresses or the agency was looking for him to provide an address, but the fact that somewhere out there there's a hospital where the letter says that he was treated at, but he doesn't say a hospital. He doesn't say the name. He was treated at a doctor's shop. It's just inconsistent. Now, adding to this, because of the problems in his testimony, it was reasonable for the immigration judge to look for corroborating evidence, to look to his documentary evidence for some sort of corroboration. It simply wasn't there. These are the minor inconsistencies that would not alone, and the immigration judge is very clear on this, inconsistent dates and inconsistencies in general in the documentary evidence might not alone be enough to establish lack of credibility, but it doesn't help him in corroborating his claim. They simply don't match up. He just could not corroborate his claim. For example, the Sarpon certificate that said that he left his position in March of 1998 when his testimony was June. The Block Semity membership certificate, which was just a blank piece of paper with no seal, no letterhead, said that he joined in October of 1994. He said the summer of 1994, the death certificate showed no police misconduct. The registration date on his brother's death certificate was completely different, a year and a half different from what he testified to as his brother's death, despite the fact that he claimed that there was a guard in the village who would register deaths automatically within a few days. It simply didn't make sense, and it didn't corroborate his claim. Now, Petitioner's counsel also makes an argument in the brief as to his trip to Pakistan being inconsistent. That's not borne out by the immigration judge's decision. The immigration judge was saying, actually, your passport is consistent with the fact that you may have taken a trip to Pakistan, but that doesn't show us that you were persecuted on that ground. Now, substantial evidence also supports the agency's determination that Mr. Singh failed to demonstrate eligibility for protection under the CAT. The country reports in the record do show problems. There are continuing problems, particularly in prisons in India. But it does not demonstrate that Mr. Singh, more likely than not, would be tortured if he were moved to India. Your opposition attorney was indicating that perhaps the board didn't identify sufficiently what it was relying upon. And I assume, after reviewing it again up here, she is referring to page 2 of the board decision, while some of these discrepancies would not individually be sufficient to support an adverse credibility determination when viewed in isolation against the background of otherwise consistent and credible evidence. Then goes on to say otherwise and indicates that how can we review the action of the board when it isn't identified which are the ones that would not alone be sufficient and which the ones alone would be sufficient? Yes, Your Honor. The board on page 1 of its decision adopts and affirms the immigration judge's decision. And it just goes on to list some of the things that the immigration judge said. And this harkens back to the immigration judge's notation that some of the discrepancies would not alone support an adverse credibility finding, particularly with respect to the documentary evidence, which simply went to whether or not that was sufficient to corroborate the claim. And it was not. So it is clear what the board was relying on. The board adopted and affirmed the immigration judge's decision. And the immigration judge is absolutely specific as to what is being relied on to find the alien not credible. If there are no further questions, thank you very much. Thank you all. The case just argued is submitted. We thank you both for your argument.
judges: Wallace, Smith, Ikuta